IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERJONA VASQUEZ, | ) | |
| | ) | Case No. 15 C 3433 |
| Plaintiff, | ) | |
| | ) | Judge Darrah |
| v. | ) | |
| | ) | |
| ZARA USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT AND APPROVAL OF NOTICE PLAN**

NOW COMES Plaintiff Erjona Vasquez by and through her counsel and move this Honorable Court to grant preliminary approval to the class settlement agreement between Plaintiff and Defendant Zara USA, Inc., a copy is attached as <u>Appendix</u> 1, and to approve the proposed class notice plan.

In support of this motion, the Parties state:

1. This matter was brought by Plaintiff, individually and on behalf of a class of persons defined in the Complaint, alleging that Defendant had willfully violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"). Specifically, Plaintiff claims that Defendant willfully violated 15 U.S.C. § 1681c(g)(1) in that Plaintiff received from Defendant during an in-store purchase in Illinois a printed computer-generated receipts at the point of sale which displayed Plaintiff's the first six digits of her payment card's account number, in addition to the last four digits of her account number, after the do not print more than the last five digits of the payment card requirement of 15 U.S.C. § 1681c(g)(1) was received by, and was known or should have been known by Defendant.

2. Plaintiff, individually and behalf of a class of all similarly situated persons in the United States who made an in store purchase at Zara, sought statutory damages in the amount of $100 to $1,000 per willful violation. Plaintiff did not seek any actual damages beyond the amount provided as statutory damages either individually or on behalf of a class.

3. Plaintiff issued extensive written discovery in this matter and the Parties subsequently engaged in the settlement discussions that ultimately culminated in the Settlement Agreement.

4. On September 4, 2015, the parties conducted a face-to-face settlement conference with Magistrate Judge Gilbert. Plaintiff and her counsel were in attendance. Defendant's counsel attended along with Defendant's General Counsel and a representative from Defendant's parent company. Defendant's insurance carrier's representative was also present. The arms-length compromises and settlement on material terms achieved at the settlement conference are contained herein. The parties further negotiated and compromised upon issues related to the form of the notice that would be provided to the class and selection of a claims administrator. "Courts also encourage parties to settle class actions early, without expending unnecessary resources." *McCue v. MB Fin., Inc.,* 15-cv-988, 2015 U.S. Dist. LEXIS 96653 * 9 (N.D. Ill. July 23, 2015) (*citing Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 U.S. Dist. LEXIS 144327, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013) ("early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere").

5. Defendant denies liability to Plaintiff and the class for the claims alleged herein but considers it desirable that the action and the claims alleged therein be settled. After considering the substantial benefits that the Class will receive under this Settlement Agreement,

up to $100 in cash per transaction[1], against that backdrop that the Supreme Court will more than likely issue an opinion in *Spokeo v. Robins*, No. 13-1399, where the issue presented is, "[w]hether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute," and that Defendant will vigorously oppose class certification, of which the Supreme Court's anticipated ruling in *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146, may strengthen or affirm Defendant's position and opposes the claim asserted in the Lawsuit, the attendant risks, uncertainties and delays of litigation, Plaintiff and Class Counsel have concluded that it is fair, equitable and in the interest of Plaintiff and the Settlement Class to resolve the Lawsuit upon the terms and conditions provided for in this Settlement Agreement.

6. The Parties desire to settle the action based upon the terms and conditions set forth in the Settlement Agreement executed by the Parties, attached hereto as <u>Appendix 1</u>.

7. For settlement purposes only, the Parties have stipulated to the certification of a class defined as:

> All persons to whom Zara USA provided an electronically printed receipt at the point of sale in a transaction occurring inside one of Zara's stores in the United States, from December 17, 2014, to April 27, 2015, which displayed the credit card's first six digits. The class includes debit cards that were used as credit cards without a PIN being used, but excludes debit cards in which a PIN was used.

8. For settlement purposes only the class as defined above meets all the requirements of Rule 23. Specifically:

---

[1] A successful Plaintiff under the FCRA can receive $100 to $1,000 per violation. 15 U.S.C. § 1681n(a). However the Act has been interpreted in two distinct ways allowing for that amount per transaction, *Brittingham v. Cerasimo, Inc.*, 621 F. Supp. 2d 646, 648 (N.D. Ind. 2009), *but see Stillmock v. Weis Mkts., Inc.*, 2010 U.S. App. LEXIS 13508 * 23 (4th Cir. July 1, 2010) ("the court adopts a per-consumer rather than a per-receipt interpretation of 15 U.S.C. § 1681n(a).").

(a) Rule 23(a)(1): Class members are ascertainable and so numerous that joinder of all members is impracticable. During the class time period there were approximately 1.3 million transactions associated with approximately 715,000 unique payment cards during the settlement class time period;

(b) Rule 23(a)(2): There are questions of law or fact common to the Class, and there is a well-defined community of interest among Class members with respect to the subject matter of the Litigation which include: (i) Whether Zara USA, Inc., violated 15 U.S.C. § 1681c(g)(1); and (ii) Whether Defendant's conduct amounted to a "willful" violation of 15 U.S.C. § 1681c(g)(1);

(c) Rule 23(a)(3): The claims of Plaintiff are typical of the claims of Class members as they each arise from Defendant's use of a point of sale terminal that printed in addition to the last for digits of the payment card's account number, the first six numbers of the account.

(d) Rule 23(a)(4): Plaintiff has fairly and adequately protected the interests of the Class and as attended a settlement conference in which an agreement between the parties was reached. Curtis C. Warner of Warner Law Firm, LLC is qualified to serve as counsel for the Class. Attached as <u>Appendix 2</u> is the Declaration of Curtis C. Warner in support;

(e) Rule 23(b)(3):

(i) Common Questions of law or fact predominate over individual questions, as discussed above regarding the electronic printing of receipts that contained too many digits of the payment card's account number and whether that conduct was "willful";

(ii) A class action is superior to other available methods for an efficient adjudication of this controversy and consumer class actions are frequently certified as classes.

9. Counsel for Plaintiff and Defendant have reviewed and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the protracted nature of the litigation and the likelihood, costs and possible outcome of one or more procedural and substantive appeals. Based on their review and analysis, Plaintiffs and Defendant entered into the Settlement Agreement.

10. Pursuant to the Settlement Agreement, the Parties have agreed to the settlement of this action on the material financial terms as follows:

(a) Creation of a Common Fund / Relief to Members of the Class: The Settlement Agreement calls for the creation of a $2 million settlement fund with $1.6 million being available for the approximately 715,000 settlement class members to make a claim up to $100 per transaction and the allocation of making available 20% of the common fund, $400,000, for the payment of attorney's fees. If any amount of the $400,000 set aside for the payment of the attorney's fees is not awarded by the Court, those funds not awarded will be distributed to the settlement class members on a *pro rata* basis in a second distribution to those class members who filed a valid claim;

(b) Relief to the Named Plaintiff: Subject to Court approval, Defendant shall pay Plaintiff $5,000 as her statutory damages and as an incentive award as serving as the class representative. Plaintiff personally attended the settlement conference which resulted in an agreement between the Parties to resolve this matter on a class basis. Courts have approved similar incentive awards in cases brought under 15 U.S.C. § 1681c(g)(1) as follows: *Aliano v. Joe Caputo and Sons-Algonquin, Inc.*, 09 C 910, Doc. 296, (N.D. Ill. July 12, 2012) ($10,000); *Prusak v. Lumber Liquidators, Inc.*, 12 C 6984, Doc. 192 (N.D. Ill. Nov. 17, 2014) ($5,000); *Redman v. Take Care Health Systems, LLC*, 11 C 9044, Doc. 44, (N.D. Ill. Sept. 6, 2012)

5

($5,000); *Radaviciute v. Christian Audigier, Inc. et al.,* Doc. 44, 10 C 8090 (N.D. Ill. Oct. 19, 2011); ($5,000); *Seppanen et al. v. Krist Oil, Co.*, 2:09-cv-195-GJQ, Doc. 123, (W.D. Mich. Aug. 9, 2011) ($5,000 each class representative); *Miller v. Southwest Airlines Co.*, C-12-5978-CRB, C-13-1429-CRB, Preliminary Approval Order, (N.D. Cal. Oct. 18, 2013) ($5,000 per plaintiff); *Bateman v. WF Cinema Holdings*, CV 07-00213, Doc. 37 (C.D. Cal.) ($5,000 to plaintiff Bateman); *Sutton v. FCA Restaurant Company, LLC*, 08-cv-5122-JJK, Dkt. 62, (D. Minn. Jan. 20, 2010) ($5,000).

(c) Attorney's Fees: Subject to Court approval, Defendant shall from the common fund make available to be paid to Class Counsel 20% of the common fund, $400,000, for the payment of attorney's fees. If any amount of the $400,000 set aside for the payment of the attorney's fees is not awarded by the Court, those funds not awarded will be distributed to the class in a second distribution on a *pro rata* basis to those class members who filed a valid claim. Two weeks prior to the proposed objection submission deadline, Plaintiff's counsel will file a petition for attorney's fees under a common fund theory as set forth in the Settlement Agreement.

(i) Structuring class counsel's attorney's fees in such a manner, "gives class counsel an incentive to design the claims process in such a way as will maximize the settlement benefits actually received by the class, rather than to connive with the defendant in formulating claims-filing procedures that discourage filing and so reduce the benefit to the class." *See Person v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014).

(ii) The attorney's fees sought of 20% of the common fund are reasonable and are tied to the amount of the common fund claimed by the settlement class members. *See Id.* at 782 ("attorneys' fees awarded to class counsel should not exceed a third or at most a half of the

6

total amount of money going to class members and their counsel.")

(iii) "Awarding attorneys' fees through a percentage of a common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a larger fee." *McCue*, 2015 U.S. Dist. LEXIS 96653 * 7 (*citing In re Synthroid Mktg. Litig.,* 325 F.3d 974, 979-80 (7th Cir. 2003)) ("explaining benefits of the percentage of fund method are that if 'class counsel invested too many hours, dallied when preparing the settlement, or otherwise ran the meter, the loss falls on counsel themselves'").

(iv) Because of the structure of the settlement, with any unawarded amounts of attorney's fees from the settlement fund going to the settlement class members who made a claim, the Court need not now determine whether Plaintiff's counsel is entitled to any fees at this time. *See Pierce v. Visteon Corp.,* 791 F.3d 782, 787 (7th Cir. 2015) (a case wherein a judgment was entered against the defendant and in addition to the court-awarded lodestar, class counsel sought additional fees from the class members under a common fund theory the Seventh Circuit held that, "this case was litigated under a fee-shifting statute, and we do not see a good reason why, in the absence of a contract, counsel should be entitled to money from the class on top of or in lieu of payment by the losing litigant. We suggested in *Evans v. Evanston*, 941 F.2d 473, 479 (7th Cir. 1991), that clients should not be ordered to pay counsel who are compensated under a fee-shifting statute; today that suggestion becomes a holding.") Here however, Plaintiff has a retainer agreement with her counsel which provides that counsel is entitled to any lodestar amount awarded by the Court or 1/3 of any settlement amount, which ever is greater, and the class' recovery is determined by a contract to which each class member is free to opt-out or object to. As such, arguably under *Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988) *Rehearing En Banc Denied* (7th Cir. Jan. 13, 1989) (common-fund recovery is allowable

in class actions despite the underlying Act's fee-shifting provision); *See also McCue*, 2015 U.S. Dist. LEXIS 96653 * 7, in which the Court held:

> The Seventh Circuit's recent decision in *Pierce v. Visteon Corp.*, No. 14 Civ. 2542, 2015 U.S. App. LEXIS 11333, 2015 WL 3985985 (7th Cir. July 1, 2015), does not preclude a percentage of the common fund recovery in the settlement context. Pierce's holding is limited to cases where an attorney obtains a judgment for the class, the attorney is awarded a fee based on the lodestar method that the court deems reasonable, and the attorney seeks an additional, second recovery. That situation does not apply to this settlement. Here, because Plaintiff is not a prevailing party, Class Counsel should be awarded a portion of the common fund that Class Counsels' work created. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) ('a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.') (collecting cases); *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 564-566 (7th Cir. 1994) ('common fund principles properly control a case which is initiated under a statute with a fee-shifting provision, but is settled with the creation of a common fund').

(d) All costs of notice and administration of the settlement shall be paid by Defendant in a manner set forth in the Settlement Agreement and are paid in addition to the $2 million dollar settlement fund. Such a provision requiring the Defendant to pay for notice outside of any common fund is proper. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014).

(e) The Settlement Agreement contains a revision clause and that all unclaimed monies from the $1.6 million made available to the class members will revert back to Zara USA, Inc., if not claimed by the settlement class members. Certain reversion clauses are known as "kicker clauses" that "provides that if the judge reduces the amount of fees that the proposed settlement awards to class counsel, the savings shall enure not to the class but to the defendant." *NBTY,* 772 F.3d at 786. The reversion here, however, is to amount unclaimed by the settlement class members that is left in fund. Any attorney's fees not awarded out of the $400,000 (20% of the common fund) will be distributed on a *pro rata* basis to the class members. Thus the reversion in this case is not a kicker clause and as it does not pose the concern raised by Seventh

8

Circuit in *NBTY*.

(f) The Settlement Agreement contains a *cy pres* provision to a 503(c) charity Dress for Success that is triggered only if a claiming class member fails to cash their check within 45 days of issuance. "A *cy pres* award is supposed to be limited to money that can't feasibly be awarded to the intended beneficiaries, here consisting of the class members." *NBTY*, 772 F.3d at 784.

11. The Notice Plan and Proposed Dates:

a. **In Store Notice:** From the beginning of the business day on **November 23, 2015, to the close of the business day on January 22, 2016**, in-store notice substantially in the form of Exhibit A printed to fill a card sized approximately 4 inches x 6 inches shall be securely post in front of every credit card reader used by any point of sales terminal in every Zara store in the United States;

b. **Print Notice:** As soon as practically possible after the entry of the Preliminary Approval Order, Zara will caused to be published the notice, in the form of Exhibit B, in People Magazine, which is a publication targeted to Zara's demographic, to be published once. The publication shall be a half-page notice.

c. **Online Notice:** Zara will cause notice to be published 97,000,000 impressions (commonly known as banner ads) online, of which 30,000,000 impressions will be delivered via Facebook, subject to availability of Facebook's advertisement inventory. A form impression is attached hereto as Exhibit C. Facebook requires that any banner ads must contain a picture image. If Facebook's advertisement inventory cannot accommodate the 30,000,000 impressions, Plaintiff will move for a modification of the Bar Date to sufficiently accommodate the delivery of 30,000,000 impressions on Facebook; and

      d.    On or before **November 23, 2015**, Zara shall cause the Settlement Website as identified in the Settlement agreement at www.SettlementZara.com to be made available on the world wide web to be able to accept the claims of the settlement class members, and shall provide the full class notice, <u>Exhibit D</u> attached, FAQ's about the settlement and a printable claim form, <u>Exhibit E</u> attached, for those class members who do not want to make a claim over the internet.

Attached hereto as <u>Appendix 3</u> is the affidavit of Jeannie Finegan, providing her expert opinion about the reach of the proposed notice plan and whether it meets the requirements of Rule 23(c).

12.    The parties and their counsel believe that settlement of this action on the terms and conditions set forth in the Settlement Agreement is fair, reasonable and adequate, and would be in the best interests of the members of the Class.

13.    The Agreement provides and the proposed order states as a provision for the Court to enter that, "pending the Fairness Hearing and the Effective Date, Plaintiff, and all members of the Settlement Class, are enjoined from commencing or prosecuting, either directly or indirectly, any action asserting any of the Released Claims against any of the Released Parties unless they first have timely Opt-Out or otherwise exclude themselves." On November 2, 2015, Deborah Catapano filed an overlapping nationwide class action lawsuit in the Eastern District of New York against Zara USA Inc., assigned case number 1:15-cv-06275, notably without mentioning a Zara store she made her purchases at, or the dates of her purchases, and the Complaint does not attach any copies of a receipt, redacted or otherwise. Given that a settlement was reached on the financial terms and the definition of the settlement class in this matter on September 4, 2015, the parties had agreed to an injunction being entered prior to the filing of the

*Catapano* matter, it would be proper under Rule 1 to enter the injunction, as if final approval is granted it would end all litigation against Zara related to the claims asserted; except for those class members who individually opt-out from the agreement and are free to pursue their individual claims.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter an Order Preliminarily Approving the Class Action Settlement which:

(i) Grants preliminary approval of the purposed settlement;

(ii) Approves and orders the direct notice as set forth in the Settlement Agreement;

(iii) Appoints Plaintiff as the class representative;

(iv) Appoints Curtis C. Warner of Warner Law Firm, LLC as class counsel;

(v) Sets dates for claims to be made, opt outs, petition for attorney's fees and objections to be submitted; and

(vi) Schedules a hearing for final approval of the class settlement.

Respectfully submitted,

s/ Curtis C. Warner
Curtis C. Warner

Curtis C. Warner
Warner Law Firm, LLC
350 S. Northwest HWY, Ste. 300
Park Ridge, IL 60068
(847) 701-5290 (TEL)
cwarner@warnerlawllc.com